IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS BRIAN HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 11-G-1167-S |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

The plaintiff, Thomas Brian Hill, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether he has a severe impairment;

(3) whether his impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform his past work; and

>   (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case, ALJ Jerome L. Munford determined the plaintiff met the first two tests, but concluded that while the plaintiff's history of seizures, schizoaffective disorder, hypertension, hypothyroidism, and history of traumatic brain injury are "severe" in combination, they did not meet or medically equal a listed impairment.  [R. 29].  The ALJ found that the plaintiff retains the residual functional capacity to perform a limited range of medium work. [R. 30].  Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

### THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions

about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by

substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401.  The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

As found by the ALJ, the plaintiff has the following "severe" impairments: "history of seizures, schizoaffective disorder, hypertension, hypothyroidism, and history of traumatic brain injury. . . ."  [R. 29].  The plaintiff filed his application for supplemental security income benefits on March 13, 2007.  As such, the earliest date the plaintiff can establish eligibility for SSI benefits is the protective filing date.  However, the record indicates that the plaintiff has had a long history of mental and emotional problems.  Indeed, records from Children's Hospital of Alabama in October 1996, when the plaintiff was 16 years old, indicate the plaintiff was hospitalized for psychosis, not otherwise specified, a conduct disorder, attention deficit hyperactivity disorder, amnestic disorder, mixed expressive/receptive language disorder and hypothyroidism. [R. 211].

In May 2002, the plaintiff was treated at Eastside Mental Health Center, and was diagnosed with schizoaffective disorder, bipolar, mushroom substance abuse, and

AD/HD by history. [R. 214]. The treatment notes also indicated borderline intellectual functioning, as well as delusional thinking and auditory hallucinations. Id. Additionally, the records note that the plaintiff has attempted suicide on several occasions. [R. 218]. The plaintiff was given a GAF score of 40, with the highest level of functioning in the year preceding this treatment was 45.[1]

The plaintiff was assessed by Social Security consulting physician, Raveendran Meleth, M.D., an internal medicine specialist, on May 28, 2007. Dr. Meleth diagnosed a history of traumatic brain injury and "attention deficit syndrome, memory loss, and complex fascial [sic] seizures" which are not well-controlled. [R. 225]. Dr. Meleth opined that the plaintiff "is unable to drive and unable to take up a job." Id.

The plaintiff was also examined at the Commissioner's behest on May 30, 2007, by Christopher Litton, Psy.D., who performed a mental status examination. Dr. Litton described the plaintiff's thought process:

> His thought process appeared adequate, but significantly below average in cognitive functioning. There was no evidence of loose associations, tangential, or circumstantial thinking. There was no evidence of delusional thought content. Notably, his history does suggest that he is dealing with an ongoing issue with psychosis. Although no issues were noted during the examination, his mental status could change drastically if properly stressed.

---

[1] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV at 32 (emphasis in original).

[R. 228]. Dr. Litton performed intelligence testing with the WISC-IV, which yielded a verbal IQ score of 71, performance IQ score of 78, and a full scale IQ score of 72, which placed him in the borderline retarded range of intelligence. [R. 229]. Dr. Litton noted the plaintiff "displayed significant weakness in areas involving general intelligence and common [sense]. He displayed marked impairments in areas examining memory." [R. 229-30]. The examiner diagnosed schizoaffective disorder, borderline intellectual functioning, hypothyroidism, head injuries, amnestic issues, and assessed a GAF of 45. [R. 230]. Dr. Litton observed:

> Prognosis for Mr. Hill fair to poor. With 95% certain[t]y, his IQ scores will never rise above mild MR/borderline intellectual functioning if tested again at a later date. Notably, previous IQ testing results placed him within the mentally retarded range, and it is likely that he was haveing [sic] a "good day" at the time of this evaluation.

Id. As for the plaintiff's judgment and insight, the psychologist noted:

> His level of judgment and insight into his situation and symptoms seems poor. He could not describe symptoms and how they affect him on a daily basis, and had some difficulty making connections between present illness and symptoms. His adjustment to normal day-to-day situations appears poor, as does his ability to handle stress. His ability to handle finances is poor.

[R. 228]. Dr. Litton emphasized:

> In this examiner's opinion sensitive periods in his development have [passed], and it is not likely that this will improve in the next 6 to 12 months regardless of interventions. As noted earlier, he did put fourth [sic] adequate effort, and this test of IQ is considered a valid assessment of his current cognitive abilities.

[R. 230]. He concluded that the plaintiff's ability to deal with other people is poor. Id.

The ALJ ignored the plaintiff's GAF score assessment of 45, which is indicative of serious impairments in social and occupational functioning. In fact, he references Dr. Litton's examination in concluding the plaintiff has only moderate impairments:

> Moreover, the undersigned considers it highly significant that although Mr. Hill maintains disabling memory problems, the clinical findings on examination by Dr. Litton, expressly undermines such assertions. In light of the above, the claimant's psychiatric impairments are reasonably expected to impose no greater than moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.

[R. 27]. By picking and choosing parts of the report that support his finding of not disabled, while ignoring and misstating the substance of the entire report, the ALJ committed reversible error. The ALJ's reasoning makes it clear that he is substituting his own opinion for that of a licensed psychologist. In cases involving mental illness, the opinions of mental health professionals are especially important.

The present case bears a resemblance to the situation in <u>Wilder v. Chater</u>, 64 F.3d 355 (7th Cir. 1995). In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The <u>Wilder</u> court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the <u>only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself</u> to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling

depression.  Severe depression is not the blues.  It is a mental illness;  and <u>health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it</u>.  The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and <u>the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight</u>.  We do not say conclusive weight;  but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

<u>Id.</u> at 337 (emphasis added)(citations omitted).

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement.  He is not free to base his decision on such unstated reasons or hunches.  Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in  <u>Marbury v. Sullivan</u>, as follows:

> An ALJ sitting as a hearing officer <u>abuses his discretion when he substitutes his own uninformed medical evaluations for those of  claimant's treating physicians</u>:  "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary."  <u>Lamb v. Bowen</u>, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*;  however, as a hearing officer <u>he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional</u>.
>
> Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. . . .
>
> Although Social Security disability benefits must be reserved only for those who qualify to receive them, <u>an ALJ may not arrogate the power to act as both judge and physician</u>. The ALJ in this case clearly exceeded

9

> his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

In the present case, it is apparent that ALJ Munford has abused his discretion by substituting his own medical judgment for that of an examining psychologist. The ALJ cites to the evaluation by a non-examining medical consultant to support his conclusion. [R. 28]. This reliance is improper in this Circuit:

> The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551 (11th Cir.1987). "The opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987).

Lamb v. Bowen 847 F.2d 698, 703 (11th Cir. 1988). In this case, as in Lamb, "the weight accorded the observations of the nonexamining physicians by the [ALJ] was inconsistent with the proper legal procedure." Id.

At the ALJ hearing, the VE was questioned about the plaintiff's mental status:

> Q:  Okay. If I determine that Mr. Hill's levels of depression and/or anxiety are at a moderately severe to severe level, would that preclude work activity generally?

10

      A:      Yes.

      Q:      If, as a result of either his medically determinable impairments, or the medication side effects, if he experiences, as a result of either situation, a moderately severe to severe limitation in his ability to concentrate, to have the necessary attention, persistence, or pace, to perform the examples of jobs that you provided to the Court, would that generally preclude his ability to work?

      A:      It would.

[R. 282-83].

## CONCLUSION

Given the opinion of the Commissioner's consulting psychological examiner and the testimony of the VE, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

      DONE and ORDERED 21 November 2011.

                                                     _____
                                                      UNITED STATES DISTRICT JUDGE
                                                           J. FOY GUIN, JR.